IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | **SEALED** |
| | § | |
| v. | § | Case No. 4:22CR 122 |
| | § | Judge Mazzant |
| MICHAEL DISMAN | § | |
| | § | |

**INDICTMENT**

FILED MAY 12 2022
Clerk, U.S. District Court
Texas Eastern

THE UNITED STATES GRAND JURY CHARGES:

**General Allegations**

1. Defendant Michael Disman was an individual residing in Heath, Texas.

2. Individuals with initials S.D. and C.D. resided in Frisco, Texas, in the Eastern District of Texas.

3. From in or around January 2018 to in or around March 2022, Disman owned, controlled, and operated bank accounts using the names of Dexter Energy, LLC and Disman Energy LLC.

4. In or around October 2020, Disman opened a bank account ending in 9708 at Truist Bank ("Disman's Truist Account"). Disman was the sole authorized signer on the bank account.

## Overview of the Scheme

5. Between in or around January 2018 to in or around March 2022, Michael Disman operated an investment fraud scheme using various companies he controlled, including Dexter Development and Disman Energy. Disman approached investors, including those located in the Eastern District of Texas, whom he knew personally and through his former employer, Thoroughbred Ventures. Disman pitched the investors on purported land development projects in North Texas. Among other misrepresentations, Disman promised that the investment would go towards lucrative land development projects and that their investment would entitle them to membership interests in Disman's companies. In reality, Disman's companies were not operational and the land development projects were non-existent. Disman actually used the investor funds for various non-business purposes, including to fund his drug addiction. In sum, Disman defrauded at least 20 victim investors and caused at least $3.2 million in losses.

## Purpose of the Scheme

6. It was the general purpose of the scheme for Disman to unlawfully and unjustly enrich himself by obtaining money from victims by means of materially false and fraudulent pretenses, representations, and promises.

## Manner and Means of the Scheme

7. The manner and means by which the defendant executed his scheme include but are not limited to the following:

a. Disman opened bank accounts, including Disman's Truist Account, to receive

and spend victim investor funds.

b. Disman made various material misrepresentations to victim investors, including about a land development project, investor payouts, and the use of investor money.

c. Disman executed sham contracts and shared real estate paperwork with investors to create legitimacy for his scheme.

d. Disman directed investors to send him funds in numerous ways, including by check, Zelle, and wire transfer.

e. Disman did not pay investors, show proof of their funds, or provide evidence that investor money was being used as promised.

f. Disman spent investor funds on various non-business personal expenses, such as ATM cash withdrawals.

g. Disman caused wire transfers that affected interstate commerce.

**Acts in Furtherance of the Fraudulent Scheme**

The defendant committed the following acts in the Eastern District of Texas and elsewhere:

*An Example of the Fraud: Victim Investors S.D. and C.D.*

8. In or around the June 2021, Disman approached S.D. and C.D. regarding an investment opportunity. According to Disman, he was purchasing land to develop a recreational vehicle (RV) park in Bonham, Texas, in the Eastern District of Texas. Disman needed funds from S.D. and C.D. as part of the investment program he was developing at the RV park.

9. To legitimize his scheme, Disman provided S.D. and C.D. an "investment agreement acceptance" letter, which was signed by Disman on July 16, 2021. In the letter, Disman stated that he was a "managing member" and that he assigned approximately 35% of his interest to C.D. and S.D. In the acceptance letter, Disman also represented that he would return a total of $275,000, which included the capital investment of $125,000 and a profit of $150,000, by August 6, 2021. In addition, Disman provided S.D. and C.D. an excerpt from a purported real estate contract, in which it showed lump sum payments relating to the land purchase totaling over $1.2 million.

10. Between in or around July and August 2021, Disman communicated with S.D. and C.D. via text message. In these texts, Disman requested wire details, sent purported updates on the project, and assured them of the security of their funds. For instance, on or about August 3, 2021, Disman sent S.D. purported aerial shots of the land and RV park he was evaluating in Bonham. In another message sent on or about July 15, 2021, Disman assured C.D., "Just know man I would never never in a million years on my children's lives and fathers grave put you guys into something that I was 100% guaranteed was to happen exactly like I promised you [sic]." That same day, Disman texted a screenshot of a purported wire transfer of $275,000 that was scheduled to be sent to C.D. on August 6, 2021.

11. Based on Disman's representations, S.D. and C.D. sent Disman a $100,000 and $30,000 investment via wire transfer from their account to Disman's Truist Account.

Disman never returned any of the $130,000, and the promised $275,000 wire transfer never happened.

### *Misuse of Investor Funds*

12. After receiving funds from the S.D. and C.D., Disman never used the money to invest in an RV park. Instead, Disman spent the money on various personal expenditures such as Doordash, Amazon, and Playstation. He also made numerous withdraws of cash from ATMs.

13. In total, Disman took money from at least 20 victims during the scheme. As a result of his fraudulent conduct, these victims lost at least $3.2 million.

### **Count One**

<u>Violation</u>: 18 U.S.C. § 1343 (Wire Fraud)

14. On or about August 3, 2021, in the Eastern District of Texas, and elsewhere, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud victims and unlawfully obtain money from such victims by means of false and fraudulent pretenses, representations, and promises, the defendant, Michael Disman, knowingly transmitted and caused to be transmitted by means of wire communications in interstate commerce the writings, signs, and signals, described below, resulting in money being fraudulently deposited into Disman's Truist Account:

| Description of Interstate Wire Transmission |
|---|
| Interstate wire transmission caused by Disman during wire transfer of $100,000 from C.D.'s Wells Fargo bank account ending in 6550 to Disman's Truist bank account ending in 9708. |

In violation of 18 U.S.C. § 1343.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

1. The allegations contained in Count One are hereby realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeitures to the United States of America of certain property in which the defendant has an interest.

2. Upon conviction of any violation of 18 U.S.C. § 1343, the defendant, Michael Disman, shall forfeit to the United States any property, real or personal, that constitutes or is derived from proceeds traceable to a violation of any offense pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

3. Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek the forfeiture of other property of the defendants up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the name of Michael Disman.

4.     By virtue of the commission of the offenses alleged in this indictment, any and all interest the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(A), and 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(A), and 28 U.S.C. § 2461(c), and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C. § 982(b)(1).

A TRUE BILL

_____
GRAND JURY FOREPERSON

BRIT FEATHERSTON
UNITED STATES ATTORNEY

_____     5/12/22
ANAND VARADARAJAN                   Date
G.R. JACKSON
Assistant United States Attorneys

Indictment
Page 8 of 8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | **SEALED** |
| v. | § § | Case No. 4:22 |
| MICHAEL DISMAN | § § § | Judge |

## NOTICE OF PENALTY

### Count One

Violation: 18 U.S.C. § 1343
(Wire Fraud)

Penalty: Not more than twenty years imprisonment, a fine not to exceed $250,000, or both; supervised release of not more than three years.

Special
Assessment: $100.00